Parsons v. The Mo. Pac. Ry. Co.

## PARSONS v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Practice :** OBJECTIONS TO ADMISSION OF EVIDENCE : EXCEPTIONS. In order that the action of the trial court, in admitting evidence, may be reviewed in the appellate court, the evidence objected to must be specifically pointed out to the trial court, and the grounds of objection thereto specifically stated, and exceptions saved to its action.

2. **Master and Servant :** DUTY OF MASTER TO FURNISH SAFE IMPLEMENTS : NOTICE. It is the duty of a master to furnish his employes with implements reasonably safe and sufficient for the purposes for which they are to be used, and, in the absence of notice to the contrary, an employe has the right to assume that the master has discharged his duty in this particular.

3. ———— : ————. It is the duty of the master not only to furnish reasonably safe machinery for the use of his servants, in the first instance, but to keep it so, so far as it can be done by the exercise of reasonable care and diligence.

4. ———— : ———— : NEGLIGENCE : PROXIMATE CAUSE. The furnishing of a defective and unsound car to the deceased by the defendant held, in this case, to have been an act of negligence constituting the proximate cause of the injury resulting in his death,

5. **Practice :** NEGLIGENCE : PRESUMPTION. In an action by a father to recover damages for the negligent killing of his minor son, it will be presumed that the deceased was, at the time of the accident, in the exercise of ordinary care and prudence.

6. ———— : PLEADING : CONTRIBUTORY NEGLIGENCE. Contributory negligence must be pleaded and proved as a matter of defence.

7. ———— : NEGLIGENCE : PROVINCE OF JURY. An intelligent jury, from common experience, may determine approximately, in any given case, what amount would compensate a parent for all pecuniary losses sustained by reason of the death of a minor child, and the parent should not be restricted to the recovery of merely nominal damages because of failure to prove the value of the services of the child, or the amount of expenses incurred in its behalf.

8. —— : —— : ACTION FOR DEATH OF MINOR CHILD : MEASURE OF DAMAGES. In an action by a parent for damages for the wrongful killing of his minor child, the jury should only consider the benefits the parent might have derived from the life of the child during its minority and not during the whole course of its probable existence.

9. Negligence : AGGRAVATING CIRCUMSTANCES : EXEMPLARY DAMAGES. In an action for damages under the statute (R. S., sec. 2122), where the wrongful act was not accompanied by any aggravating circumstances, but the injury was the result, simply, of the want of ordinary care, exemplary damages cannot be recovered. (R. S., sec. 2123).

10. —— : —— : —— : PRACTICE. Where the circumstances are such as to have the effect of aggravating the damages, the jury should not be left to determine them for themselves, but such aggravating circumstances should be pointed out by proper instructions.

11. —— : —— : —— : ——. In cases under Revised Statutes, sections 2121, 2122, no damages can be given the surviving party entitled to recover by way of *solatium* for mental anguish or distress for the death, or for loss of the society of the deceased ; and, of this the jury ought to be advised.

12. —— : MEASURE OF DAMAGES : PRACTICE. In an action by a parent for the wrongful death of his minor child, where the circumstances of the case afford a safe standard by which the compensation in damages can be measured, such standard should be given to the jury, by stating the reasonable limits within which their calculations should be confined.

13. —— : —— : ——. In cases where no reliable standard can be laid down for the admeasurement of damages, much must be left to the judgment of the jury, and their finding will not be disturbed, unless it is such as to show that the verdict was the result of prejudice or passion.

14. Verdict. The verdict in this case held to be excessive.

*Appeal from Cooper Circuit Court.* — HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*Thos. J. Portis, Thos. G. Portis* and *Wm. S. Shirk* for appellant.

(1) Defendant's demurrer to the evidence should

have been sustained for at least four different reasons..
( *a* ) The evidence shows that the alleged unsound con-
dition of the car was not the proximate cause of the
injury, but that the immediate cause of the injury was
the neglect of plaintiff's son, the deceased brakeman, to
set at least one of the brakes, at all, and his failure to
set the other brakes upon the cars which escaped, suffi-
ciently tight to hold them upon the grade.   Cooley on
Torts [1 Ed.] prop. 3, pp. 70, 71 ; prop. 4, pp. 78, 79, and
80 ; *Henry v. Railroad*, 76 Mo. 288 ; *Railroad v. Staley*,
19 Am. and Eng. Ry. Cas. 381 ; *Cleveland v. Elliott*,
4 Ohio St. 474 ; *Pease, Adm'x, v. Railroad*, 61 Wis. 163.
( *b* )   The evidence shows that the cars were loaded, and
approached the other loaded cars at the rate of eight
miles an hour, and came together with great force.
Deceased was in a position to see and appreciate the
danger, and voluntarily incurred it, and had ample
opportunity to escape it.    Wood on Master and Servant,
sec. 328 ;   *Smith v. Railroad*, 61 Mo. 588 ; *Walsh v.
Transfer Co.*, 52 Mo. 434 ; 57 Ia. 444 ; 45 N. J. L. 368 ;
26 Kas. 443 ; *Nolan v. Shickle*, 3 Mo. App. 300.  ( *c* ) The
deceased was himself guilty of negligence, which directly
contributed to the accident, and no negligence of the
defendant intervened between the negligence of the de-
ceased and the injury.   The rule is, that where the
plaintiff has been guilty of negligence directly contrib-
uting to the injury, he cannot recover, unless the
defendant, after becoming aware of plaintiff's danger,.
could have prevented the injury by the exercise of ordi-
nary care and caution.   This rule is so familiar and well.
established that a citation of authorities seems unnec-
essary ; but see   Cooley on Torts [1 Ed.] 563,   674 ;
Field on Damages, secs. 24 and 167 ; *Karle v. Railroad*,
55 Mo. 476 ;  *Yarnell v. Railroad*, 75 Mo. 576 ; Shear. &
Redf. on Neg. sec.  25 ; Whart. Neg., sec. 300 ; *Scoville
v. Railroad*, 81 Mo. 434 ; 2 Thomp. Neg. 1149. ( *d* ) There
is no evidence showing that the car which broke was not

reasonably safe and sufficient for its intended use. It only shows that it did not stand the great shock and strain of colliding, when moving at the rate of eight miles an hour, with eight other loaded cars, and impelled by its own weight and load, and that of at least two other loaded cars behind it. Nor was it defendant's duty to furnish a car that would stand such a collision. Nor does the fact that other cars may have, at other times and under other circumstances, stood as fierce a crush, prove that this one was not reasonably safe and sufficient for the purposes for which it was intended and used. *Porter v. Railroad*, 71 Mo. 66, and authorities cited. It is sufficient if the company provided a car, which without extraordinary accident would have safely carried its load to its destination. *Amies v. Stevens*, 1 Str. 128; *Railroad v. Blower*, 41 L. J. C. P. 268. (2) No damages being proved, none should have been given, unless merely nominal. No circumstances of aggravation being shown, the damages are merely compensatory. *Morgan v. Durfee*, 69 Mo. 478; *Joyce v. Branson*, 73 Mo. 28; *Rains v. Railroad*, 71 Mo. 164. Where compensatory damages alone are recoverable, the amount of such damages should be shown by the evidence. The jury should not be left free to act in an unrestrained and irresponsible manner. *Hickman v. Railroad*, 22 Mo. App. 344; *Railroad v. Brown*, 26 Kan. 443; *Railroad v. Sykes*, 2 Am. & Eng. Ry. Cases, 254. (3) The damages were excessive. *Railroad v. Brown*, 26 Kas. 443.

*Draffen & Williams* for respondent.

(1) The unsound condition of the car was the proximate and direct cause of the death of plaintiff's son. *Nagel v. Railroad*, 75 Mo. 653. (2) The deceased had the right to assume and to act upon the presumption that the car was safe and sufficient. *Brown v. Railroad*, 53 Iowa, 595; *Condon v. Railroad*, 78 Mo. 567; *Porter*

*v. Railroad*, 71 Mo. 66. (3) Contributory negligence is a defence to be pleaded and proved by the defendant. *Donovan v. Railroad*, 89 Mo. 147; *Harrison v. Railroad*, 74 Mo. 364; *Thompson v. Railroad*, 51 Mo. 190. There is no presumption that the deceased was guilty of contributory negligence, but the contrary. *Buesching v. Gas Co.*, 73 Mo. 219; *Stepp v. Railroad*, 85 Mo. 229. The court below properly refused to take the case from the jury. *Drain v. Railroad*, 86 Mo. 574; *Petty v. Railroad*, 88 Mo. 306. (4) The instruction given in behalf of plaintiff as to the measure of damages was correct. *Nagel v. Railroad*, 75 Mo. 653; *Owen v. Brockschmidt*, 54 Mo. 285. What the life of one person is worth to another is a question to be submitted to the sound judgment of the jury, under all the evidence, and within the limits of the statute. *Grogan v. Railroad*, 87 Mo. 321; *Railroad v. Barron*, 5 Wall. 90; *O'Mara v. Railroad*, 38 N. Y. 445; *Railroad v. Keller*, 67 Pa. St.; *Chicago v. Hissing*, 83 Ill. 207; *Railroad v. Shannon*, 43 Ill. 338. (5) The damages were not excessive. *Bierbauer v. Railroad*, 15 Hun, 559; s. c., 77 N. Y. 558; *Erwin v. Steamboat Co.*, 23 Hun, 573. (6) The question of damages, within the statutory limits, must be left to the discretion of the jury, and there is nothing in this case to show that they were actuated by any improper motive in assessing the damages. 3 Sutherland on Damages, p. 282, *et seq.*

BRACE, J.—This is an action instituted by plaintiff to recover damages for the death of his minor son, Walter Parsons, who was in the employ of defendant as a brakeman, and whose death, it is alleged, was caused by the breaking of the defective timbers of a car in the train on which he was engaged.

The evidence on the part of the plaintiff tended to prove that said Walter was, at the time of his death, a minor, unmarried, aged about eighteen years and four

months; that plaintiff was his father, and that his mother was dead; that the train on which he was employed as a brakeman was hauling rock from a quarry near Warrensburg; three of the cars, after having been loaded with rock, which was placed in the ends over the trucks, and none in the centre, were brought up and placed on the switch, on which the cars remained standing there after the engine was detached (it does not appear who set the brakes on these cars); that, by some cause, not disclosed in the evidence, the three cars started down the track. The conductor and the brakeman, Walter Parsons, were about a car's length away from these three cars; they both started to them; the conductor tried to get on the rear car, but did not succeed. Parsons got on the front car and began tightening up the brakes; one of the cars had no brakes on it; there were eight cars standing lower down on the track; Parsons did not succeed in stopping the three before they collided with the stationary cars; the front car of the three upon which Parsons was standing broke in the middle, throwing him forward and the rock upon him, instantly killing him; that the timbers which broke were decayed and partially rotten; that the force of the collision was not sufficient to have broken them if they had been sound, and that the defect in the timbers could have been discovered by a proper inspection.

The defendant demurred to the evidence, and the demurrer having been overruled, the defendant offering no evidence, the case was submitted to the jury under the instructions of the court, and a verdict returned for plaintiff for five thousand dollars. After an unsuccessful effort for a new trial and in arrest of judgment the defendant appealed, and seeks a reversal for alleged errors, considered, in their order, in the course of this opinion.

I. In order that the action of the court below in admitting evidence may be reviewed in the appellate

court, the evidence objected to must · be specifically pointed out to the trial court, and the grounds of objection thereto specifically stated, and the ruling of the court thereupon excepted to. This has been so frequently ruled by this court that it is becoming irksome to cite the cases. In this case many items of testimony contained in the depositions are grouped together, and a general objection made to their being admitted to the jury, with no specific reason assigned why any particular item of such evidence should not be admitted; in such case it was not incumbent upon the trial judge to fish out incompetent evidence, if any there was in the mass objected to, with a hook and line of his own.

II. We find no error in the action of the circuit court overruling defendant's demurrer to the evidence. It was the duty of the defendant to furnish to its employes cars reasonably safe and sufficient for the purposes for which they were to be used by such employes; and in the absence of notice to the contrary, the deceased had the right to assume that the car which he mounted in the line of his duty, and on which he was attempting to set or tighten the brakes when it broke, was so safe and sufficient. There was no evidence tending to show that deceased had notice of any defect in the car; in fact, he was killed within two weeks after he left his father's house to enter the service of the defendant, and could have had no such experience as would have enabled him to detect such a latent defect in the timbers of the car as the evidence tends to show existed; it was not his duty to do so, if he could. It was the duty of the defendant, not only in the first instance to furnish safe and sufficient cars to be used by their employes in their business, but to keep them so safe and sufficient, so far as it could be done by the exercise of reasonable care and diligence. This is an ever-present duty, and its neglect is a continuing neglect, running with the cars furnished.

When the deceased mounted the car in the line of his duty to tighten the brakes, he had a right to assume that the car was a sound and sufficient one. If at that moment, as after, till the collision, it was an unsound and insufficient one, and such unsoundness and insufficiency could have been discovered by the exercise of reasonable care and diligence, and by reason of its insufficiency it broke, killing the deceased, then such killing was the immediate and direct result of the defect in such car which rendered it so insufficient, and the defendant's breach of duty in having such car in the hands of its employe for use in its business by him at the time he was killed was an act of negligence which was the proximate cause of his death. The evidence of the plaintiff tended to prove that the timbers of the car, that is, both the stringers or sills and the floor, were so much decayed that it was not reasonably sufficient for the purpose of hauling rock ; that its condition could have been discovered by reasonable inspection ; that if it had been in a reasonably sound condition it would have withstood the shock of the collision ; and fails to show that the deceased was guilty of any act of negligence contributing to the injury. It does not appear what caused the cars to start, or who set the brakes if they were set, or what, if any, duty the deceased was engaged in performing prior to the starting of the three cars down the track. When the curtain rises upon the tragedy, the cars are standing on the track, the engine is detached, the conductor and the deceased are near the cars. They rush towards them, the conductor fails to get aboard, the deceased succeeds, gets to the brakes and endeavors to stop the train, fails, and falls a martyr to his sense of duty in endeavoring to save from injury the property of his employer. There is no contributory negligence in the case, so far as the evidence in the record goes ; it can only be found by indulging in unwarranted presumptions. The only presumption the law indulges in respect thereof is, that the

deceased was in the exercise of ordinary care and diligence at all times in the discharge of his duties until the contrary appeared. *Buesching v. Gas Light Co.*, 73 Mo. 219. It was not incumbent upon the plaintiff in the first place to prove that the deceased was in the exercise of ordinary care and prudence. Contributory negligence is to be pleaded and proven as matter of defence. *Thompson v. Railroad*, 51 Mo. 190; *Buesching v. Gas Light Co.*, *supra*; *Harrison v. Railroad*, 74 Mo. 364; *Donovan v. Railroad*, 89 Mo. 147; *Huckshold v. Railroad*, 90 Mo. 548.

III. It is urged as ground for reversal in this case that the court erred in its instruction to the jury on the measure of damages, and that the damages assessed are grossly excessive; these will be considered together. The instruction is as follows:

"If the jury find for the plaintiff they may give such damages as they should deem fair and just, not exceeding five thousand dollars, having reference to the necessary injury resulting to the plaintiff from such death, and also having regard to the mitigating or aggravating circumstances, if any, attending such wrongful act, neglect, or default."

The instruction is simply the language of the statute in the form of an instruction. R. S., 1879, sec. 2123. This statute, first enacted in 1855, differs in two essential particulars from the English statute on the same subject, usually cited as "Lord Campbell's act," and similar to the provisions of which are those of the statutes of many of the states of the union, and in so far as it does differ, the decisions of the courts under those statutes fail to furnish a guide to the principle upon which the damages are to be admeasured under our statute in many cases. The right of action for death caused by wrongful act, neglect, or default of another, under those statutes, is given to the legal representative of the deceased for the benefit of the next of kin in the

order mentioned in the statute, and such damages are to be given "as the jury may think shall be proportioned to the injury resulting from such death to the parties respectively for whose benefit such action shall be brought," as in the English statute, or "such damages as they shall deem a fair and just compensation, not exceeding five thousand dollars, with reference to the pecuniary injuries resulting from such death to the husband or widow, or next of kin of such deceased," as in the New York statute.

The first important difference to be noted, so far as the principle to govern in this case is concerned, is, that, under those and similar statutes, the right of action, when it enures to the benefit of a parent for the death of a child, is not dependent on the minority of the child. If the parent has a right of action under those statutes it might well be said that such parent can recover damages for the value of the whole life of the child. Under our statute a right of action can only accrue to the father or mother of a minor child. A parent may have two sons killed at one and the same time, the death of each caused by the same wrongful act of another; one aged twenty and the other twenty-two years. For the death of the former he has a right of action and can recover damages for the necessary injury resulting to him from such death. For the death of the latter he has no right of action, and can recover nothing, although his life may have been in the past and promised to be in the future of almost inestimable pecuniary value to his parent, while the life of the former may never have been, and gives no promise ever to be of any value to his parent. The life of the older may have been his parent's stay, hope, and support; that of the younger the care and burden; yet the law gives damages in the latter case and none in the former. This distinction illuminates the meaning of the word "necessary" used in the statute, and shows that the damages in the case in

which they are given are not to be measured by the uncertain and supposititious value to be placed upon a life as such, but by a reasonably certain and fixed rule growing out of the relations existing between a parent and his minor child, and the corresponding duties, rights, and obligations of that relation.

The law presumes the life of a minor child to be of value to his parent, because he is entitled to his services and is responsible for his support during minority. He is necessarily injured by a wrongful act resulting in the death of such minor child which thereby deprives him of the value of those services and casts upon him the burden of legal liability for that support when deprived of the value of such services, enhanced by the additional expense of providing medicine, medical attention, and nursing during illness, and for funeral charges when he dies. To compensate him for this loss and this burden the law allows the parent of such minor substantial damages, and they may be measured by the experience and judgment of the jury, enlightened only by a knowledge of the age, sex, and condition in life of the deceased, and the parent is not restricted to the recovery of merely nominal damages, because the value of the services of the child, or the amount of expenses incurred or paid for his support, and other necessaries during illness, or funeral expenses, be not proven. An intelligent jury, from common experience, may determine approximately, in any given case, what amount would compensate a parent for all pecuniary losses sustained by reason of the death of a minor child, but unless they are distinctly informed that such compensation is to be limited to the value of the child to its parent during the period of its minority, they are liable, under a general instruction, such as was given in this case, to base their estimate upon all the probable or possible benefits that such parent might derive from the life of such child during the whole course of its probable existence, and thus

measure the parent's damages by a standard not con-
templated in the law.

The jury in this case ought to have measured the
necessary injury to the plaintiff, not by the value of his
son's life, but by the value of the life of his minor son.
It is the life of the son's minority, and not the life of
the son, for which the parent is to be compensated. In
the class of cases to which this belongs the field of
inquiry is limited to a time certain, i. e., the majority
of the minor; but there is introduced into our statute an
element of uncertainty not common to many statutes on
this subject, in that provision, which authorizes the
jury, having ascertained the damages with reference to
the necessary injury resulting from the death to the
surviving parties who may be entitled to sue, to also
have regard to the "mitigating or aggravating circum-
stances attending the wrongful act, neglect, or default
which caused the death." At common law the damages
for a tortious personal injury were compensatory to the
party injured and under certain circumstances might be
made exemplary, but his right of action did not survive,
nor could his death be complained of as an injury, by
any one. While the legislature might, they have not,
provided for the survival of such actions; but recogniz-
ing that dictate of justice which requires that persons
directly interested in the life of a person killed by
another should receive from the wrongdoer compensa-
tion for the fatal injury; as also that established rule of
public policy which permitted the party entitled to sue
to also recover exemplary damages, when the act com-
plained of was wilful or malicious, or characterized by
cruelty, wantonness, or oppression, or was the result of
such negligence as evinced a conscious disregard of the
rights of others, embodied in the act in question, in those
cases where the damages were not liquidated by the act,
two elements of damage are to be considered by the jury:
compensation to the injured survivor and punishment to

the wrongdoer when the circumstances attending the wrongful act, neglect, or default are such as to warrant it.

In that class of cases in which the jury would be warranted in giving exemplary damages by reason of the circumstances of aggravation attending the act, the amount must necessarily be left, within the limit of the statute, to the fairness and sense of justice of the jury, discharging their duty, uninfluenced by prejudice or passion, and as to such damages no standard for their admeasurement can be given by the court. Even in such cases, however, the jury should not be left to grope their way in the dark, and determine for themselves what facts or circumstances are such as should have the effect of aggravating the damages, but these should be pointed out, if any such are proven in the case, by proper instructions. *Rains v. Railroad*, 71 Mo. 165. In those cases where the facts and circumstances attending the act, neglect, or default are such as not to warrant aggravated damages, but in which compensation only can be given, it will frequently happen, however, that no reasonably reliable standard can be laid down for the admeasurement of the damages, and much must be left to the judgment of the jury; and in such cases, where that judgment has been exercised, it will not be disturbed unless the result is such as to shock the sense of justice of the judicial mind, and leave no doubt that the verdict was the result of prejudice or passion. But in that class of cases, where a reasonably safe standard is afforded by the circumstances of the case, by which the compensation in damages can be measured, such standard should be given to the jury, not necessarily in terms by which the amount is to be exactly determined, with mathematical certainty, but the reasonable limits within which the calculations ought to be confined should be stated. And as it is undisputed that, as to all classes of cases under this act, no damages can be given

the surviving party entitled to recover, by way of
*solatium* for mental anguish or distress for the death or
for loss of the society of the deceased; so, of that
principle, the jury ought also to be advised.

To which of these classes does this case belong? It
evidently does not belong to that class of cases in which
the jury could be authorized to aggravate the damages,
since the default or neglect of the defendant, which has
been found to be the cause of the injury, was simply
want of ordinary care which might have prevented it.
Attending this, there was no circumstance shown indi-
cating wilfulness, malice, wantonness, recklessness, or
conscious negligence, or any wrong intent that could be
made the basis of a verdict for aggravated, exemplary,
or punitory damages. The damages, then, in this case
should have been compensatory only.

Nor does it belong to that class of cases in which
the damages, in the nature of things, must be largely
conjectural, and for that reason not susceptible of
approximate admeasurement, as, for instance, when the
husband is suing for the death of his wife, or the wife
for the death of the husband, and the value of the daily
ministrations of a whole life is to be estimated; or when
a child of tender years is suing for the death of a parent,
the pecuniary value of whose parental care and nurture,
aside from maintenance, education, and support during
minority, is not susceptible of adequate measurement in
dollars and cents; nor yet to that class of cases where a
parent is suing for the death of his child of tender years,
the value of whose life to his parent during its minor-
ity is simply and purely matter of conjecture. This
unfortunate youth, at the time of his death, lacked but
thirty-two months of his majority; that span of his life
being the period from which his father could derive the
only pecuniary benefit, for the loss of which he could
recover in this action, how much could it have been
worth to him? About two weeks before his death he had

left his father's home and entered into the employ of the defendant as a brakeman. There was no evidence tending to show what wages he was earning in that capacity, or might possibly earn in the coming thirty-two months, and none as to what his support would cost; but it is apparent, from common experience, taking the most favorable view of his possible earnings, and supposing during that whole period he never was sick nor lost a day; that he was furnished with clothes sufficient to last him to the end of that period, and that he was promoted as fast as could reasonably be expected by a faithful and intelligent young man of his age, yet in reason he could not, during that term, have earned, over and above his support, more than fifty dollars per month, or sixteen hundred dollars for the period. To this let there be added reasonable funeral expenses, say two hundred dollars. As his death was instantaneous there were no other expenses. We then have eighteen hundred dollars as the amount that, within the bounds of reason, might be given to the plaintiff in the way of damages for compensation for possible loss to him by reason of the death of his son. Can any one conceive of any additional pecuniary benefit the plaintiff could hope to derive from his son during his minority? Yet the jury gave him five thousand dollars. What was the thirty-two hundred dollars in excess for? It must have been, either as a *solatium* to the father for his mental agony and distress at the death of his son and the loss of his society, or by way of punitory damages; but we have seen the law does not allow damages for the former, and that this is not a proper case for punitory or exemplary damages.

This verdict is, then, grossly excessive and should have been set aside. The cause of it was doubtless, not that the jury were influenced by either prejudice or passion, but that they were not sufficiently informed as to the proper standard by which the damages ought to

have been measured, owing to the very general terms of the instruction given on that subject, and the introduction into it of an element of possible damages; *i. e.*, aggravation "not warranted by the testimony." The form of instruction in this case has been in several cases criticized by this court, but hitherto no case has been reversed on account thereof, for the reason that, in previous cases, the court could not see, either that the instruction, under the circumstances of the particular case, could have been made more definite, or if so, that any injury had resulted to the defendant by reason of its vagueness. In this case the instruction could have been made more definite, and the injury is palpable in the grossly excessive verdict rendered by the jury.

The judgment herein of the circuit court is, therefore, reversed and the cause remanded for new trial. All concur, except Sherwood, J., absent.