## Barth v. Kansas City Elevated Railway Company, *Appellant*.

### Division Two, February 16, 1898.

1. **Pleading**: EX-OFFICIO NOTICE OF RECORDS IN SAME CAUSE.   Courts will take notice of all matters of record in the same cause; hence it is unnecessary in an amended petition to allege that the original suit was begun within the statutory period.

142 535
75a 550
142 535
149 152
142 535
152 393
142 535
87a 435
142 535
e173 7680
e174 7492
174 7494
142 535
101a 3190

Barth v. K. C. Elevated R'y Co.

2. ———: ———: DAMAGES FOR KILLING PLAINTIFF'S HUSBAND. Plaintiff's husband was killed by defendant's railroad on February 25, 1894, and this action was begun by his widow March 22, 1894. On May 5, 1894, defendant demurred, but withdrew the demurrer on June 16, and on the same day plaintiff filed an amended petition, which defendant answered October 9, and on December 12, 1894, plaintiff filed a second amended petition, without averring the filing of the original petition within six months after the death of plaintiff's husband. *Held*, that such averment was unnecessary, since it stated that he was killed on February 25, 1894.

3. Practice: EFFECT OF DEMURRER. A demurrer to the evidence admits every fact which the jury might infer from the evidence if it were before them.

4. Negligence: STARTING CARS. A carrier of passengers is bound to allow them reasonable time to enter and leave its cars, and while it may start before a passenger has been seated, it must exercise the highest degree of care that prudent and cautious persons would use and exercise under similar or the same circumstances in starting its cars, so as not to suddenly jerk or jar him and thereby injure him.

5. ———: ———: CASE STATED. The plaintiff's evidence showed that defendant's car was entered from an elevated platform twenty feet high, through iron gates, which were opened after the car had stopped, then up a few steps of the car's platform; that the deceased stepped upon the steps of the car to take passage, and while in the act of stepping upon the car's platform the conductor rang the bell and the car was suddenly started forward, and the deceased either fell off, or stepped off to avoid falling off, upon the station platform, and by reason of the momentum acquired by him while thus on the steps of the car he was precipitated to the ground below, and killed. *Held*, that on this evidence plaintiff was entitled to go to the jury.

6. ———: RAILINGS AT STATION PLATFORMS. Under the circumstances in this case, the question of whether the defendant was guilty of negligence in leaving a space of twenty-six inches between the cars on the track and the railing or guard to the station platform, was one for the jury. It is also *held*, that the mere fact that other elevated roads had been equally guilty in constructing such railings, would be no defense.

7. Death of Husband: MEASURE OF DAMAGES. The jury were instructed that if they found for plaintiff, who was suing for the negligent killing of her husband, they would award her "such damage not exceeding five thousand dollars as you may deem fair and just under the evidence in this case with reference to the necessary injury resulting to her from the death of her husband." *Held*, not to be erroneous. An instruction for the defendant which "excludes all idea of prospective damages of a pecuniary nature and limits the

widow's recovery to the immediate damage suffered or at most to those up to the trial," was properly refused, the words "necessary injury" in our statute being broad enough to include any damages which may be estimated according to a pecuniary standard, whether present, prospective or proximate.

*Appeal from Jackson Circuit Court.* — HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Pratt, Dana & Black* and *Frank Hagerman* for appellant.

(1) The petition by the widow is fatally defective in showing that the death occurred more than six months prior to its filing, and in failing to show that there were no minor children or that she had sued within six months. *Barker v. Railroad*, 91 Mo. 86. (2) Plaintiff, upon the facts, should not recover. *Solomon v. Railroad*, 104 N. Y. 437; *Evans v. Interstate Rapid Transit Co.*, 106 Mo. 594; *Carroll v. Same*, 107 Mo. 653. The proof, if tortured into making a case for the jury, was in support of the second count of the petition which was voluntarily dismissed. (3) Plaintiff's instructions 1 and 3 are erroneous, because: *First.* Issues were submitted as to negligence not pleaded. *Waldhire v. Railroad*, 71 Mo. 514; *Hite v. Railroad*, 130 Mo. 132; *McManamee v. Railroad*, 135 Mo. 440. *Second.* The relation of passenger and carrier did not exist. *Schepers v. Railroad*, 126 Mo. 665; *Schaefer v. Railroad*, 128 Mo. 71. *Third.* The proof, if it authorized any submission, supported the case made by the second count of the petition, which was withdrawn, and not the first count, under which these instructions were drawn. (4) Plaintiff's instruction 2 is erroneous because it submitted the issue of negligence as to the railing around the platform of the elevated

station.  *Evans v. Interstate Rapid Transit Co.*, 106 Mo. 594, 599; *Carroll v. Same*, 107 Mo. 653; *Allen v. Railroad*, 64 Iowa, 94. (5) Plaintiff's fourth instruction was erroneous. *McGowan v. St. Louis Ore & Steel Co.*, 109 Mo. 518. (6) Defendant's instruction 4 was wrongfully refused. *McGowan v. St. Louis Ore & Steel Co.*, 109 Mo. 518.

*Meservey, Pierce & German* for respondent.

(1)   It was not necessary for the plaintiff to allege in her second amended petition that she had sued within six months, for the filing of the suit and the subsequent proceedings made of record rendered it unnecessary.   Matters of which judicial notice is taken need not be stated in pleadings, and the court takes judicial notice of all matters which have been made of record in the same case.   *State v. Ulrich*, 110 Mo. 350; *State v. Jackson*, 106 Mo. 174; *State v. Daugherty*, 106 Mo. 182; *Railroad v. Stanley*, 54 Ill. App. 215; R. S. 1889, sec. 2076; Bliss on Code Pl., secs. 177 and 199. (2) It is negligence *per se* for those operating a street railroad to start a car suddenly forward while persons are in the act of getting upon the same.   Booth on Railway Law, sec. 348; *Dougherty v. Railroad*, 81 Mo. 325; *Curtis v. Railroad*, 27 Wis. 158. (3) It was for the jury to determine whether the act of the defendant company in so constructing the railing or guard as to leave the open space at the west end of the station platform was an act of negligence. *King v. Railroad*, 98 Mo. 235; *O'Mellia v. Railroad*, 115 Mo. 205; *Fullerton v. Fordyce*, 121 Mo. 1; *Murphy v. Railroad*, 115 Mo. 111; *Railroad v. Tennant*, 66 Fed. Rep. 922; *Railroad v. Ives*, 144 U. S. 408; *Bethmann v. Railroad*, 155 Mass. 352.   The appellate court will not review the testimony to determine the sufficiency of the evidence unless ap-

pellant sets out the whole of it in his abstract.    *Craig v. Scudder*, 98 Mo. 664; *Nichols v. Nichols*, 39 Mo. App. 291; *Gunby v. Rodgers*, 42 Mo. App. 465.    (4) Plaintiff's fourth instruction was not erroneous.    If counsel for defendant wished to have the elements of damage explained more fully, they should have offered proper instructions embodying their ideas.    *Browning v. Railroad*, 124 Mo. 55; *Boettger v. Iron Works*, 124 Mo. 87; *Haehl v. Railroad*, 119 Mo. 325; *Stoher v. Railroad*, 91 Mo. 509; *Tetherow v. Railroad*, 98 Mo. 74; *Haymaker v. Adams*, 61 Mo. App. 581; *McCarroll v. Kansas City*, 64 Mo. App. 283; *Railroad v. Kneirim*, 48 Ill. App. 243.    (5) Instruction 4 offered by defendant was properly refused.    It was misleading and erroneous.    It confined plaintiff's damages to the money actually lost, and omitted several elements of damage to which she was entitled.    *Grogan v. Broadway Foundry Co.*, 87 Mo. 321; *Nagel v. Railroad*, 75 Mo. 653; *Parsons v. Railroad*, 94 Mo. 286; *Rains v. Railroad*, 71 Mo. 164; *Tilley v. Railroad*, 29 N. Y. 252; *Delaware, Etc., v. Jones*, 128 Pa. St. 308; *Petrie v. Railroad*, 29 S. C. 303; *Railroad v. Armstrong*, 52 Pa. St. 282; *Railroad v. Cutter*, 19 Kan. 83; *Railroad v. Stanley*, 54 Ill. App. 215; *Railroad v. Kneirim*, 48 Ill. App. 243; *Ewen v. Railroad*, 38 Wis. 613.

*Pratt, Dana & Black* and *Frank Hagerman* for appellant in reply.

(1) Plaintiff's instruction as to damages falls within the condemnation of *McGowan v. St. Louis Ore & Steel Co.*, 109 Mo. 518, and *Goss v. Railroad*, 50 Mo. App. 614.    But counsel adopt the suggestions of the Court of Appeals in *Haymaker v. Adams*, 61 Mo. App. 581, and *McCarroll v. Kansas City*, 64 Mo. App. 283, that these cases have been overruled.    This is not true

in fact. All this court has ever said is that if it affirmatively appears that the damages actually equalled the amount recovered and defendant asked no affirmative instruction, the error was without prejudice. Dangerous as this doctrine is, it can not be applied to this case, the verdict being for $4,500 and the only proof was that deceased was seventy-two years old, a workman of a character not disclosed, and had at least one son who worked for himself and that expectancy of life of the deceased was but eight and sixteen hundredths years.

GANTT, P. J.—This action is by the widow of Bartholomew Barth for damages resulting to her from his death, occasioned, as she alleges, by the negligence of the defendant, at its elevated station at Ninth and Mulberry streets in Kansas City, Missouri.

Plaintiff's husband was killed February 25, 1894, and this action was commenced March 22, 1894. The record shows that at the April term, 1894, defendant appeared and moved to dismiss the suit, which motion was overruled. On May 5, 1894, defendant demurred, but on June 16, 1894, withdrew its demurrer, and on the same day plaintiff filed an amended petition which defendant answered October 9, 1894, and afterward on December 12, 1894, the second amended petition, on which this cause was heard, was filed. It contained two counts, but as the second was withdrawn, the first count only remains as the basis of the judgment recovered. The first count avers in substance that plaintiff, on the twenty-fifth of February, 1894, was the lawful wife of Bartholomew Barth and on that day defendant was a railway corporation organized under the laws of Kansas, and was engaged in operating an elevated electric street railway for the carriage of passengers for hire between Kansas City, Kansas, and Kansas City,

Missouri; that in order to patronize said railway, passengers were required to ascend to its stations by means of steps and go upon elevated platforms in order to get into its cars; that the platform and station at Ninth and Mulberry streets is about twenty to thirty feet above the surface of the ground; that on the west end of said platform defendant had erected a fence or guard railing to protect persons patronizing its road from falling off of said platform, but had so negligently or carelessly constructed it that it left a space of about three feet between the track of said company and the south end of said fence or railing, thus rendering said platform exceedingly dangerous to its patrons making use thereof to enter its trains; that it had permitted said platform to remain in this condition for a year prior to February 25, 1894, and for a time sufficient for defendant to have ascertained its dangerous condition by the exercise of ordinary care. The petition then charges the facts attending the death of plaintiff's husband in these words:

"Plaintiff further states, for the purpose of admitting passengers to the cars owned and operated on its said railroad as aforesaid, steps are supplied on the right hand side of the rear platform, by the aid of which passengers are invited and are accustomed to go upon the platform and into said cars. That each of said cars and the particular one hereinafter mentioned is provided with a gate which is intended to guard against accidents and to prevent passengers from falling from the cars while in motion; that the rules of the defendant company provided that the gates of the cars should be kept closed while the cars were running over the elevated structure and that the cars should not be started until passengers were fairly landed or received on the car. That it was the duty of the agents, employees and servants of defendant to keep said gates

closed while running said cars over the elevated structure, and they were only accustomed to be open while the cars were stopped for the admission of passengers at the several stations along said railroad.

"Plaintiff states that, to wit, on said twenty-fifth day of February, 1894, the husband of plaintiff, Bartholomew Barth, entered the station of said defendant company at the corner of Ninth and Mulberry streets as aforesaid for the purpose of taking a trip west as a passenger on one of defendant's cars. Plaintiff states that the destination of her said husband, Bartholomew Barth, was his home in Kansas City, Kansas, near one of the terminal stations of said defendant company in said Kansas City, Kansas, and that upon the arrival at said station of the first car of said railway conducted, maintained and operated by said defendant and so propelled by the servants, agents and employees of defendant's company, and after said car had been stopped and the gate of the car opened for the admission of passengers, the husband of said plaintiff attempted to get upon said car for the purpose of riding upon the same as aforesaid.

"Plaintiff states that while Bartholomew Barth was in the act of getting upon said car, and before he had sufficient time to get upon the platform of said car, and without waiting for said Bartholomew Barth to board said car or to get upon a safe portion of the platform of the same, and before said gate had been closed, the agents, servants and employees of defendant, managing its said railway and in charge of said car, and knowing that he was in the act of boarding said car, negligently and carelessly started said car forward suddenly and at a rapid rate of speed, causing said Bartholomew Barth, the husband of this plaintiff, to be thrown with great force and violence off the car and upon the platform, near the point where said

fence or guard on the west end of said platform was negligently and carelessly left open; and by reason of the fact that said fence or guard was left exposed and open on the west end of said platform as aforesaid, and there being nothing to stop his body and nothing which he could grasp to save himself, he was by the impetus of said fall from defendant's car, propelled with great force and violence over said platform to the surface of the ground, twenty to thirty feet below.

"Plaintiff states that by reason of said fall, caused by the negligence and carelessness of the servants, employees and agents of said defendant as aforesaid, said Bartholomew Barth, the husband of plaintiff, was so greatly bruised, mangled and hurt that he died; that such death resulted from and was directly occasioned by the defect and insufficiency in the construction of said guard or fence as aforesaid, and by the carelessness and negligence of said servants, agents and employees in so starting said car before said Bartholomew Barth had got upon said car and before the gate to said car was closed as aforesaid.

"Plaintiff states that she was dependent upon the deceased, Bartholomew Barth, for her support, and has suffered pecuniary loss and has been otherwise injured by the death of said Bartholomew Barth to her damage in the sum of five thousand dollars.

"Wherefore plaintiff asks judgment for said sum of five thousand dollars, and for all costs herein incurred and expended."

The answer is a general denial and plea of contributory negligence of plaintiff's husband.

At the January term, 1895, there was a verdict and judgment for plaintiff for $4,500. Motions for new trial and in arrest were duly filed and overruled and defendant appeals.

The evidence disclosed these facts. The station

at Mulberry street on defendant's line is at least twenty feet above the surface of Ninth and Mulberry streets and is reached by a stairway. The platform was about thirty-eight feet long, the station house in the center, with two doors opening south on the platform along the tracks. It is nineteen feet from a point between the two doors to the western edge of the platform. The platform is about eight feet wide in front of the station house. The mode of operation is to require passengers to remain in the station house until a car arrives and then open the door and the passengers cross the platform and enter the cars. The cars are supplied with iron gates for the platforms, to protect passengers from falling. Electricity is the motive power. At the west end of the station platform the company had erected and maintained an iron fence or railing. When a car stood opposite the end of this railing it was twenty-six inches from the end of the railing, leaving a space of that length open. With these physical facts in view the petition was predicated upon two acts of negligence: *first*, the starting of the car suddenly forward while plaintiff's husband was attempting to get upon the platform to go to his home; *second*, the maintaining of an insufficient railing or guard on the west end of the station platform. On the afternoon of February 25, 1894, about 5 o'clock, plaintiff's husband, Bartholomew Barth, a man about seventy-one years old, ascended the steps to defendant's said station at Mulberry and Ninth streets, to take a car for his home in Kansas City, Kansas. A car soon arrived from the Union Station in Kansas City, Missouri, en route for Kansas City, Kansas. It was designated as a Chelsea Park car. Immediately behind and following it was another car of defendant's known as an Edgerton Place car. The evidence shows quite satisfactorily that the Edgerton

car would have taken Mr. Barth to a point nearer his residence, but that he often went on the Chelsea Park cars. The testimony is somewhat conflicting as to the minor details of the occurrences immediately attending Mr. Barth's death, but the substantial facts are these. Upon the arrival of the Chelsea Park car at the station platform, a passenger alighted therefrom and immediately a man by the name of Veal preceded Barth up the car steps and upon the rear platform of the car. Mr. Barth, following, stepped upon the first step of the car, while it was yet standing still, and was in the act of stepping up either upon the second step or the platform, accordingly as remembered by different witnesses, when the conductor signaled the motorman to start the car, and the sudden starting or jerking of the car either caused Barth to lose his balance and fall off, or to step off to keep from falling, and when he struck the platform he toppled over the western edge of the platform through the open space between the end of the railing and the car, and fell to the street below, and received injuries from which he died that evening.

Some of the witnesses testified he fell off, others that he stepped off, but the great preponderance supported the finding of the jury that he fell off. Again there was evidence that the deceased said to the conductor that he would take the next or Edgerton Place car, but these witnesses testified that they saw no effort upon his part to voluntarily leave the car. On the other hand other witnesses testified that at the same time that the conductor signaled the motorman to start the car he told Barth he had better get off and take the next car, and these witnesses say that the deceased did not then have time to leave the car before it began to move. Much testimony was elicited as to the

exact point along the platform at which the car stopped, how far it had moved before deceased attempted to leave it or fell off, and how far it had gone and how fast it was moving when he fell. The seeming contradictions are such and only such as naturally occur in the evidence of the most trustworthy witnesses. From the whole, one fact was overwhelmingly established, to wit, that whether Barth fell or stepped off, he had so acquired the momentum of the moving car that immediately upon striking the platform he toppled over its western edge and fell to the ground below. The evidence would seem to be largely in favor of the testimony which placed the car west of the door when it stopped, and that it had started again before Barth fell off or left it, and had reached so near the western edge that upon falling he was at once precipitated to the street below. Upon this state of facts the trial court instructed the judge in its first and third instructions for the plaintiff as follows:

"1. The jury are instructed that it was the duty of those in charge of the car operated by the defendant company, to stop at the station a reasonably sufficient length of time to allow passengers to get off and on the cars in safety; and if the jury believe from the evidence that they did not do so and that while they saw plaintiff's husband getting upon the car, they negligently, carelessly and suddenly started up the car while he was in the act of getting on the car, and that plaintiff's husband was thereby thrown from said car and killed without any fault or negligence on his part, then your verdict should be for the plaintiff.

"3. If you find from the evidence that the servants of the defendant stopped the car at the Mulberry street station for the purpose of receiving and letting off passengers, but did not stop the same a reasonably sufficient length of time to enable the plaintiff's hus-

band by the use of reasonable expedition and care to get safely upon the car before it again started, and it was so started by the agents and servants of the defendant while they saw that plaintiff's husband was in the act of climbing the steps of the platform for the purpose of getting upon the car as a passenger, whereby he was thrown down and killed without any fault or negligence on his part, then your verdict must be for the plaintiff.''

For the defendant the court instructed the jury:

''6.   If the injury to Barth was caused by an attempt to step off or on a moving car on the elevated road, then plaintiff can not recover.

''7.   Barth was required to use his eyes and senses; and if by the use of same and exercise of reasonable care he could have gotten up into the car or off on the platform in safety and thereby have avoided the injury, then plaintiff can not recover.

.''8.   If Barth was injured while attempting to step off the car on the elevated road while the car was in motion, then plaintiff can not recover herein.

''9.   If Barth was injured by reason of attempting to get on a moving car on the elevated road, then plaintiff can not recover herein.''

Other instructions will be discussed in the opinion.

I.   Considering the grounds assigned for reversing the judgment of the circuit court in the order of defendant's brief, the sufficiency of plaintiff's petition is first.   The amended petition of the widow avers that her husband's death was caused by the negligence of defendant and occurred on February 25, 1894.   Her amended petition was filed December 12, 1894, or more than six months after his death, without averring there were no minor children.   Section 4425 gives an action to the wife of the deceased when her husband's death is caused by the negligence of the defendant in the

cases therein mentioned, provided she brings suit within six months after such death. If she fails to sue within six months, then the right of action is in the minor children of the deceased, if such there are. If there are no such minor children she may bring her suit in twelve months. Counsel for defendant insists that the petition is fatally defective in not averring there were no minor children, relying upon *Barker v. Railroad*, 91 Mo. 86. But it does appear by the record in the cause that the action was commenced within six months and that it has been continuously pending upon the original or amended petitions since the twenty-second day of March, 1894. Our code of civil procedure expressly dispenses with the necessity of pleading any matter or fact of which the courts will take *ex officio* notice. R. S. 1889, sec. 2076. It is fundamental that courts will take notice of their own records in the same cause, hence there was no necessity for averring the filing of the original petition within six months after Mr. Barth's death. *State v. Ulrich*, 110 Mo. 350; *State v. Jackson*, 106 Mo. 174; Bliss on Code Pl. [3 Ed.], secs. 177 and 199.

II.    It is next insisted that the circuit court erred in not sustaining the demurrer to the evidence. Without repeating the testimony, the substance of which is set out in the statement, it suffices to say that there was much evidence tending to establish that when defendant's car reached Mulberry street and Ninth it stopped to permit passengers to alight and others to enter; that Mr. Barth, the deceased, stepped upon the steps of the car to take passage; that while in the act of stepping upon the platform the conductor rang the bell and the car was suddenly started forward, and that Mr. Barth either fell off, or stepped off to avoid falling off, upon the station platform, and by reason of the acquired momentum was precipitated to the surface of the street below and killed. Whatever the contention of

defendant may be as to other testimony which it claims contradicts this evidence for plaintiff, plaintiff was entitled to go to the jury if this evidence taken as true made out a case of actionable negligence, because it is settled law in this State that a demurrer to evidence admits every fact which the jury might infer from the evidence if it were before them. *Rine v. Railroad*, 100 Mo. 228; *Myers v. Kansas City*, 108 Mo. 480; *Franke v. St. Louis*, 110 Mo. 516.

Certainly it can not be said that when the plaintiff closed in chief that any negligence on the part of her deceased husband had been shown. When the car of defendant stopped at the Mulberry street station and passengers were permitted to alight and the iron gate to the platform was opened, it was an invitation to Mr. Barth to take passage thereon. There was no delay on his part in attempting to board the car. He followed immediately in the wake of others who went on the car at that station. The conductor had not given any reasonable signal that it would no longer be safe to attempt to get on the car. By permitting him to thus enter upon its steps or platform the plaintiff's husband at once became and was accepted as a passenger on said car and defendant was bound to exercise the highest degree of care of a prudent person under similar circumstances for his safety, and be held to a strict responsibility therefor. *Brien v. Bennett*, 8 Car. & P. 724; *Smith v. Railroad*, 32 Minn. 1. Having then invited the deceased to place himself in a dangerous position, it is too clear for discussion that it was the duty of the conductor to wait the few moments necessary to enable the deceased to get safely on the car and the conductor to close the gate behind him. To hold otherwise would be to encourage a reckless disregard of the lives and safety of the traveling public.

Considering the character of the agencies employed

by the defendant as a carrier of passengers, the evidence of the plaintiff's witnesses of invitation to take passage and the giving of the signal while deceased was still in the act of stepping aboard the car, we have no hesitancy in holding the demurrer to the evidence was properly refused.   A common carrier of passengers is bound to allow its passengers reasonable time to enter and leave its cars, and while it may start before a passenger has been seated, it must exercise the highest degree of care that prudent and cautious persons would use and exercise under similar or the same circumstances, in starting its cars so as not to suddenly jerk or jar him and thereby injure him.   *Dougherty v. Railroad*, 97 Mo. 647; *Smith v. Railroad*, 108 Mo. 243; *Jackson v. Railroad*, 118 Mo. 199; *Gilson v. Railroad*, 76 Mo. 282; *Furnish v. Railroad*, 102 Mo. 438; *Jacquin v. Cable Road*, 57 Mo. App. 320.

The objection that the evidence of Veal, Cresswell and Allnew did not support the first and only remaining count in the petition seems to have been made without a copy of that count before the learned counsel.   This evidence strictly corresponded with the allegations of that count.

III.   Instructions 1 and 3 given at the instance of plaintiff correctly declare the law.   If the jury found, which they evidently did, the facts upon which the recovery was predicated, plaintiff's husband was a passenger and entitled to the strict care defined in the last paragraph of this opinion.   *Schepers v. Railroad*, 126 Mo. 665, and *Schaefer v. Railroad*, 128 Mo. 64, are not in point.   In those cases the attempt was to board a moving car, whereas in this the evidence is absolutely conclusive that the train had stopped to receive passengers, and while it was standing still the deceased stepped upon the steps of the platform.   As already said, he was entitled to all the protection of a passenger under these circumstances.

IV.    The second instruction for plaintiff is earnestly challenged on the ground that the pleadings do not warrant the submission of the negligent construction of the railing to the jury, and because there was no evidence tending to prove that it was negligently built. Said instruction is in these words:

"2.    You are further instructed that it was the duty of the defendant railway company to exercise ordinary care and prudence in constructing and maintaining reasonably sufficient and proper railings and guards at the ends of its station platforms for the reasonable safety of persons using its platforms and cars, and if you believe from the evidence that it failed to exercise such ordinary care and prudence in constructing and maintaining the railings or guards at its Mulberry street station, then it was guilty of negligence in that regard."

Before proceeding to discuss this question, however, it must be constantly borne in mind that it does not authorize a recovery by itself.    The effect of the negligent construction is only submitted to the jury along with the negligent starting or management of the car, as will be seen from the plaintiff's fourth instruction in these words:

"4.    If you find that the injuries resulting in the death of the plaintiff's husband, Bartholomew Barth, were caused by the negligence of the servants or employes of defendant in charge of the car, in suddenly starting the car while said Barth was in the act of stepping upon the platform of said car, combined with the negligence of defendant in so constructing the railing at the west end of the platform as to leave the open space at the end of the platform described in evidence, if you find that such construction was negligent, then you will find for the plaintiff and give her such damage, not exceeding five thousand dollars, as you may deem fair and just under the evidence in this case with reference

to the necessary injury resulting to her from the death of her husband. And in such case your verdict should be in the following form:

"'We, the jury, find the issues for the plaintiff and assess her damages at the sum of ———— dollars.

"' ————, Foreman.'"

It is obvious that the petition declares upon two concurring acts of negligence on part of defendant, *first*, the sudden jerk in starting the car whereby plaintiff's husband was precipitated from the car; and *second*, negligence in leaving such a wide space between its railing and the cars so that when he fell or was compelled to step from the cars there was nothing to prevent his falling from the station platform to the street below.

These instructions then are not outside of the pleadings. Was there substantial evidence supporting them? Keeping in view that this was an elevated road, the most ordinary care would dictate that the edges of such a structure should be guarded with a railing or fence. This much seems to be conceded by defendant, but it maintains that there was no proof that leaving a space of twenty-six inches between the end of the railing and the sides of the cars as they passed was negligence. "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the question is one for the jury" under our system of laws. *O'Mellia v. Railroad*, 115 Mo. 205; *Murphy v. Railroad*, 115 Mo. 111.

Bearing in mind that this was a railroad for the carriage of passengers alone; that neither employes or passengers were allowed to ride outside; that gates were constructed to the platforms to keep passengers off of the steps, no necessity apparently existed for extra space between the sides of the car and the end of the

railing to prevent accidents, and none was shown. The dangerous character of the transportation forbade both employes and passengers hanging on the outside of the cars.    There was no evidence that defendant invited or permitted its patrons to ride outside of the cars.

Defendant relies upon *Evans v. Interstate Rapid Transit Co.*, 106 Mo. 594, as strongly in its favor.    In that case, as in this, it was an elevated road.    The space left was only twelve inches and the fact that a post was after the accident placed in this space was urged as showing that leaving the space of twelve inches was negligence.    But this court said: "There can be no doubt but a railing was necessary to guard against accidents.    We do not understand counsel for plaintiff to question this proposition.    Indeed, the company found it necessary to increase the height of the railing leading from each side of the door out to the cars to keep people from jumping over.    At the time of the accident the railing was strong, and the only evidence of any defect is the fact that the defendant some three or more weeks after the accident decreased the space between the railing and cars from twelve to six inches by placing a plank or additional post at the corners where the railing turns to the right and left. The evidence of the engineer who constructed the road and depot shows that this post was put in for the sole purpose of giving strength to the railing.    It is clear that no man of reason, possessed of even a low degree of prudence, would of his own volition go in between this railing and the cars as the space existed at the date of the accident.    But, for whatever purpose this new post was added, it was perfectly manifest that the want of it had no agency in causing the death of Mr. Evans.    Had the post been there at that time, it could be argued that its presence increased the danger

with as much plausibility as it is now argued that the want of it contributed to the death of Mr. Evans."

It is clear that in that case the failure to put in the post did not cause Evans' death, but it can not be said as a matter of law that the failure to have a railing across the open space of twenty-six inches through which deceased in this case fell did not contribute directly to his death. Had there been a railing to within twelve inches of the cars, it seems perfectly clear that he would have been able to recover himself or would have been caught thereby in spite of himself. We do not think the cases are similar on their essential features.

Again, *Carroll v. Railroad*, 107 Mo. 653, is cited. In that case Carroll boarded an elevated steam car in motion by getting on the sheet iron covering of the steps of the last platform on the train and kept himself in that position by holding to the iron gate that barred his entrance until struck by a structure near the track and knocked to the street below, and it was held he could not recover. The proximity of the cattle chute in that case was held not to be negligence because the company had neither intended that its passengers should ride in such exposed places or winked at their doing so. But in this case deceased was violating no regulation of the company. As said in the *Evans* case, a railing was obviously necessary for the protection of passengers. Now, surely it can not be maintained that because the portion it built was well constructed, that this will absolve it from its duty to build sufficient to make it a protection to its patrons instead of a trap for their destruction. When it is agreed that a fence or railing is indispensable as a safe guard to the public desiring the travel over defendant's line, evidently it is meant a railing along the whole distance save and except a reasonable space for the safe

passage of the cars.    What is a reasonable distance is
a question of fact for the jury under the evidence in
this case.    It was not essential to the plaintiff's recov-
ery that she should prove what space ordinarily is left
between the cars and railing by other similar companies.
Elevated railroads are comparatively new in this
country and plaintiff might be at a loss to establish a
custom, but if defendant had shown, which it did not,
that this was the usual distance allowed by other roads
of like character, this would not have prevented the
jury finding that it was negligence in this case.    The
mere fact that other roads had been equally negligent,
would not be a defense to the action.    *Dougherty v.
Rapid Trans. R'y*, 128 Mo. 33, and cases cited.

V.    We are thus brought to the consideration of
the instruction 4 on the measure of damages given
at the instance of plaintiff, already reproduced at
length in paragraph IV of this opinion.    The jury were
instructed that if they found for plaintiff they would
award her "such damage not exceeding five thousand
dollars as you may deem fair and just under the evi-
dence in this case with reference to the necessary injury
resulting to her from the death of her husband."    This
instruction was approved in *Browning v. Railroad*, 124
Mo. 55, and *Boettger v. Iron Works*, 124 Mo. 87.
*McGowan v. Steel Ore Co.*, 109 Mo. 518, is relied upon
to convict the circuit court of error.

The contention of the very able and learned
counsel for defendants in that case was only for an
instruction in the words of the instruction herein com-
plained of.    Subsequently we ruled in the *Browning*
case where the essential elements of the damages were
given to the jury for the plaintiff in the language of the
statute, its generality would not constitute reversible
error, reserving to the defendant the right to point
out the elements limiting the damages in its own

instructions.  Following that case and *Boettger Iron Works'* case in the same volume, this instruction must be held not to constitute error.

Was error committed in refusing defendant's instruction which was in these words: "If the jury should find for the plaintiff, and that the deceased met his death on account of the negligence of the defendant in not having a sufficient railing on the elevated platform, they will assess the damages at such sum as will compensate her for the actual pecuniary loss which she has sustained by reason of the death of her husband, and nothing should be allowed for mental anguish, grief or sorrow at the loss of her husband; the question in such case is as to the amount of pecuniary loss as shown by the evidence, and that means the actual amount in money which she has lost by reason of being deprived of the support of her husband."

Plaintiff had no right to recover for mental anguish, grief or sorrow which she suffered by the loss of her husband.  This is the construction placed upon similar statutes throughout the country.  Shearman & Redfield on Negligence [5 Ed.], sec. 767; Field on Damages, sec. 630; *Parsons v. Railroad*, 94 Mo. 286.

But the propriety of the instruction in other respects is denied.  If unsound principles of law have been incorporated in the instruction by the defendant, it was not error in the circuit court to refuse it or to fail to give a correct instruction of its own motion.  In civil cases it is not the duty of the trial court to instruct of its own motion if the parties neglect to ask proper instructions.  Unlike the *Browning* case, *supra*, or the *Tetherow* case, 98 Mo. 74, defendant has sought to lay down the elements which may enter into the estimate of damages which plaintiff may recover, and we are again confronted with the necessity for construing our statute on this subject.  A review of the decisions of

this court and a comparison of our statute with Lord. Campbell's act and similar statutes of various States of our Union discloses that the General Assembly has not adopted any of those acts in their entirety, and while we may profit by the construction placed upon them by their courts, we must note the difference between them and the language of our own statute, and endeavor to ascertain what the purpose of the depart- ure from those statutes was. *Lord Campbell's act* pre- scribed that "in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respect- ively for whose benefit such action shall be brought." 9 and 10 Vict., ch. 93 (1846). That act was construed in 1852 in *Blake v. Railroad*, 83 Eng. Com. Law Rep. 93, 18 A. & Ell. 93 (Queen's Bench), and it was held that in estimating damages to the surviving relative, the jury could not take into consideration their mental suffering or loss of society, but must give compensation for pecuniary loss only. It was held that the statute gave the surviving relatives a *new* right of action and hence nothing could be recovered for the loss or suffer- ing of the deceased himself, but only for those injuries resulting to his family, a pecuniary estimate of which could be made.

The statute of *New York* (Laws 1849, p. 388) pro- vided that "the jury may give such damages as they shall deem a fair and just compensation not exceeding $5,000, with reference to the pecuniary injuries result- ing from such death to the wife and next of kin of such deceased person." In *Tilley v. Railroad*, 24 N. Y. 471, the Court of Appeals, through Judge DENIO, in construing this statute, said: "The difficulty upon this point arises from the employment of the word pecuniary in the statute; but it was not used in a sense so limited as to confine it to the immediate loss

of money or property; for if that were so there is scarcely a case where any amount of damages could be recovered. It looks to prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded; and the word pecuniary was used in distinction to those injuries to the affections and sentiments which arises from the death of relatives and which, though most painful and grievous to be borne, can not be measured or recompensed by money." "It excludes also those losses which result from the deprivation of the society and companionship of relatives which are equally incapable of being defined by any recognized measure of value."

Now our statute, section 4427, Revised Statutes 1889, gives "such damages not exceeding five thousand dollars as they (the jury) may deem fair and just with reference to the necessary injury resulting from such death, . . . having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

It is now the settled rule of decision in this court that where there is neither allegation of malice, wickedness or wantonness in the tort complained of, nor evidence of any aggravating circumstances, it is improper in the instruction to include the words "having due regard to the mitigating or aggravating circumstances." Those words are only proper in a case in which punitive damages or smart money may be allowed. *Stoher v. Railroad*, 91 Mo. 509; *Parsons v. Railroad*, 94 Mo. 286.

On the other hand, it has been uniformly held that exemplary damages may be allowed under this statute within the limits of the penalty affixed. *Nichols v. Winfrey*, 79 Mo. 544; *Gray v. McDonald*, 104 Mo. 303; *Vawter v. Hultz*, 112 Mo. 633. With these expositions

of the statute, let us recur now to the defendant's instruction.

The most casual reading will show that it excludes all idea of prospective damages of a pecuniary nature and limits the widow's recovery to the immediate damages suffered or at most to those up to the trial only. That such an instruction is incorrect even under a statute like that of New York which limits the damages to those pecuniary only in express terms, is apparent from the *Tilley* case. Judge DENIO held it looked to prospective damages, and there is nothing in the phraseology of our act which restricts the right of recovery to the present actual loss of money to the plaintiff. The word "necessary injury" in our statute is broad enough to include any damages which may be estimated according to a pecuniary standard, whether present, prospective or proximate. While it may not be feasible for the trial courts to define with exactness the rule of damages applicable to the loss of a husband or wife, to the jury, with a knowledge of the character, habits of deceased, station in life, business, etc.; much is necessarily left in arriving at a just conclusion.

While defendant was justly entitled to an instruction warning the jury that they were not authorized to award plaintiff any damages for the pain and anguish she suffered by the tragic death of her husband, it was not entitled to restrict her compensation to the mere present money loss she had suffered, and hence its instruction was erroneous and no error was committed in refusing it.

In *Parsons v. Railroad*, 94 Mo. 286, this court said there was "a class of cases in which the damages, in the nature of things, must be largely conjectural and for that reason not susceptible of approximate admeasurement, as for instance when the husband is suing for the death of his wife or the wife for the death of her

husband, and the value of the daily ministrations of a whole life is to be estimated."

Having carefully examined every assignment of error presented by defendant, we find no reversible error in the record and hence affirm the judgment of the circuit court. SHERWOOD and BURGESS, JJ., concur.