ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1910.

---

*(Continued from Volume 152)*

---

OLGA VOELKER, Respondent, v. HILL-O'MEARA
CONSTRUCTION COMPANY, Appellant.

St. Louis Court of Appeals, November 10, 1910.

1. **DEATH: Negligence: Evidence: Causal Connection: How Established.** While, in an action for death resulting from negligence, it is necessary for plaintiff to not only prove negligence but that decedent's death resulted therefrom, and that the causal connection be established by the evidence and not rest upon speculation and conjecture, still it is sufficient if the facts proved are of such nature and are so connected and related to each other that the causal connection may be fairly inferred from them.

2. **———: ———: Falling into Unguarded Excavation: Evidence: Statements of Deceased: Right of Jury to Disregard.** In an action for death resulting from decedent's falling into an unlighted and unguarded excavation, the jury were justified in attributing a statement made by decedent to persons who found him in the excavation that he had been shot and thrown into the excavation, when an examination of his body disclosed that he had not been shot, to a disordered condition of his mind, due to his injury.

153 App.] (1)

3. ———: ———: ———: ———: Presumptions. In an action for death resulting from decedent's falling into an unlighted and unguarded excavation, the law presumes decedent did not commit suicide, and if the surroundings did not indicate how he come to be in the excavation, the presumption is that it was without design.

4. EVIDENCE: Motives, Feelings and Instincts. In all cases touching the conduct of men, motives, feelings and natural instincts are allowed to have their weight and to constitute evidence for the consideration of courts and juries.

5. DEATH: Negligence: Falling into Unguarded Excavation: Sufficiency of Evidence. In an action against a contractor, who excavated in a street in the space reserved for the sidewalk and who failed to erect barriers or maintain warning lights, as required by a city ordinance, for the death of a pedestrian who fell into the excavation, evidence *held* to justify a finding that decedent met his death by falling into the excavation while walking on the street and that the negligence of defendant in failing to guard the excavation and maintain warning lights thereat was the proximate cause of decedent's death.

6. DAMAGES: Instructions: Correct in General Scope: Necessity of Asking Limiting Instruction. An instruction on the measure of damages is not erroneous because general, if it is correct as far as it goes, and a party desiring a more specific instruction must request it in proper form.

7. DEATH: Action by Wife: Damages: Instructions. In an action by a wife for the negligent death of her husband, an instruction that the jury may assess her damages at such sum as they believe will compensate her for her husband's death, not exceeding a specified sum, is sufficient, in the absence of a request for a more specific instruction.

8. INSTRUCTIONS: Refusal. Where unsound principles of law are incorporated in a requested instruction, it is not error to refuse it or to fail to give a correct instruction.

9. DEATH: Action by Wife: Damages: Elements of Damages: Instructions. In an action by a wife for the death of her husband, resulting from negligence, it is not necessary for plaintiff to prove what the earnings of decedent were, to avoid being limited to nominal damages, since the personal attention of her husband to insure her comfort and the many ways in which he might make himself helpful and useful to her should be taken into consideration in measuring her loss; and for such loss she is entitled to substantial damages, without any showing as to decedent's earnings.

10. ———: ———: ———: ———: **Loss of Society.** In an action by a wife for the death of her husband, resulting from negligence, the wife is not entitled to recover for loss of her husband's society.

11. ———: ———: ———: ———: **Evidence: Presumptions: Instructions.** In an action by a wife for the death of her husband, resulting from negligence, the law presumes that decedent was industrious and sober, treated his family tenderly and properly, and contributed sufficiently toward their support, so that a requested instruction limiting plaintiff's recovery to nominal damages, if the jury believed plaintiff failed to prove decedent had performed such duties, was properly refused.

12. ———: ———: ———: ———: **Failure of Husband to Perform Duties.** In an action by a wife for the death of her husband, resulting from negligence, although the husband had not performed the duties of treating his family tenderly and properly and contributing sufficiently toward their support, the wife had a right to the performance of such duties by the husband, and her recovery is not to be limited to nominal damages where that right is negligently destroyed.

13. ———: ———: ———: ———. A wife suing for the death of her husband, resulting from negligence, may recover for the loss of the personal attention and usefulness of her husband, and for having to assume the burden of a father's care in the education and support of minor children of the marriage, without showing his fortune, earnings, or capacity to earn, or his habits, or treatment of his family, and without showing, to any degree of exactness, his age or the state of his health.

14. ———: ———: ———: **Discretion of Jury.** In an action by a wife for the death of her husband, resulting from negligence, the award of damages is largely, if not altogether, conjectural, not subject to even approximate admeasurement, and juries are not confined to any exact mathematical calculation, but are vested with considerable discretion, with which the courts will not interfere, unless it has been abused.

15. ———: ———: ———: **Excessive Verdict.** In an action by a wife for the death of her husband, resulting from negligence, the evidence showed that decedent was employed as agent for an insurance company; that he had a child ten years old and another child whose age was not stated. *Held,* that while the age and state of health of decedent could not be accurately inferred, still it might be inferred he was not extremely old or seriously disabled and had some degree of life expectancy, and that a verdict for $3500 was not so large as to shock the sense of justice, although the life expectancy of deceased might not appear to be very great.

16. **APPELLATE PRACTICE: Questions Reviewable: Abstract.** The court, on appeal, will not pass upon a contention that an instruction is erroneous as going beyond the duties imposed by an ordinance, where appellant failed to set out the ordinance in his abstract.

17. ————: **Dismissal as to Co-defendants: Right to Complain.** A defendant against whom a judgment is rendered in an action for negligent death may not complain because the cause was, at the close of plaintiff's evidence, dismissed as to co-defendants.

18. **INSTRUCTIONS: Refusal: Covered by Other Instructions.** It is not error to refuse a requested instruction embodied in instructions given by the court of its own motion.

19. **DEATH: Negligence: Contributory Negligence: Intoxication of Decedent: Instructions.** An instruction, in an action for the death of a person falling into an unguarded excavation in a sidewalk, that if decedent directly contributed to his death by his own negligence there could be no recovery, and that if he fell into the excavation while intoxicated and the intoxication directly contributed to the accident and the injury would not have occurred but for the intoxication, the verdict must be 'for defendant, properly submitted the issue of contributory negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Collins & Chappell* for appellant.

(1) There was no evidence to sustain the verdict. Stepp v. Railroad, 85 Mo. 229; Brown v. Railroad, 20 Mo. App. 222; Christy v. Hughes, 24 Mo. App. 275; Saxton v. Railroad, 98 Mo. App. 494. (2) The instructions given by the court as to the measure of damages are erroneous. Coleman v. Land Co., 105 Mo. App. 254; McGowan v. Ore & Steel Co., 109 Mo. 518.

*Phil H. Sheridan, A. R. Taylor* and *Henry B. Davis* for respondent.

(1) There was plenty of evidence to sustain the verdict. Buesching v. St. Louis Gas Light Co., 73 Mo. 219; McKenzie v. Railroad, 216 Mo. 22; Youngue v. Railroad, 133 Mo. App. 141. (2) The appellant can-

not object to the instruction as to the measure of damages on the ground that it is too general, where it did not ask for a more specific instruction. Simpson v. Ball, 129 S. W. 1017; Taylor v. Iron Co., 133 Mo. 349; Barth v. Railroad, 142 Mo. 535; Browning v. Railroad, 124 Mo. 55; Browning v. Railroad, 124 Mo. 72; Boettgher v. Iron Works, 124 Mo. 87; Geismann v. Missouri-Edison Co., 173 Mo. 654; Sharp v. Biscuit Co., 179 Mo. 553; Fisher v. St. Louis Transit Co., 198 Mo. 562. (3) The verdict of the jury is not excessive. Sharp v. Biscuit Co., 179 Mo. 553. (4) The prejudicial error claimed did not result to the defendant's injury by plaintiff making parties of a large number of persons in interest in this litigation and their resulting dismissal at the close of plaintiff's evidence. Moudy v. Dressed Beef & Provision Co., 130 S. W. 476.

STATEMENT.—This was an action against the Hill-O'Meara Construction Company, the general contractor erecting a building on Locust street in the city of St. Louis, for negligence in not guarding an excavation in the sidewalk in front of said building, and in not displaying and maintaining red lights as required by ordinance, it being alleged that plaintiff's husband was killed by falling into said excavation on or about March 1, 1907. The building in question occupied the entire west half of the block fronting on Locust, Tenth and Olive streets. On the night in question the outside walls of the building had been finished up to the tenth story, except that the first or ground-floor story was not inclosed with brick but was entirely open from Olive to Locust street between the steel columns supporting the building. The floor of the first story inside the building had been completed. But it was planned that the basement was to extend outside the building line to the curb line of Locust street, and for this purpose the entire sidewalk on Locust street, from the alley on the east to Tenth street on the west, some one

hundred and fifty feet, and the earth thereunder, had been removed and excavated by defendant to a depth of some fourteen feet, and a retaining wall one hundred and fifty feet long had been built at the outer curb edge of the excavation but not above it. Steel girders or beams had been laid across the top of the excavation from the building to the retaining wall for the purpose of supporting a concrete sidewalk, but the concrete had not been placed between them, and the entire excavation lay open, except for a few boards thrown across the beams near the building. There were no boards near the curb. A line of cinder piles extended from the alley up to near Tenth street and close to the outer edge of the excavation, the said cinder piles being from one to two feet high and the cinders being for use in concreting.

At about half past two o'clock in the morning of March 2, 1907, after the building had been deserted and was in darkness, two police officers and the night watchman of the building, being attracted thereto by a noise, found plaintiff's husband at the bottom of the excavation, close by the retaining wall and about twenty feet west of the alley, lying across a large wooden roller. His back was broken.

Plaintiff's evidence tended to show that there was no barrier, fence, guard or warning light around or near the excavation or cinder piles for the entire distance between the alley and Tenth street. All along the curb line, for one hundred and fifty feet, the excavation was unguarded.

The testimony of the police officers was to the effect that when the man was found he moaned and said he was shot, and asked who had put him there; that there was no smell of liquor about the man and nothing to indicate whether he was drunk or sober; but that at the dispensary, and the next morning at the hospital, and while, according to the police officers, he was rational, he said that he had had a glass or two of wine

out on Gravois Road during the day; could not stand much and had drunk more than he ought to; had come down town on a Cherokee car and had gotten off at Ninth and Pine streets to go to a toilet. As a matter of fact the man was not shot, and no one saw him fall into the excavation. The police searched his clothes at the dispensary and found five memorandum books, $16.47 in a purse, a nickel-plated watch and a pair of eye glasses. The man died at the city hospital from his injuries.

The only evidence concerning the relationship of plaintiff and deceased, his employment, family and domestic life was the testimony of plaintiff herself, as follows:

"I live in the city of St. Louis. F. H. G. Voelker was my husband. We were married in 1881. I lived with him up to the time of his death. He met with the accident March 1st, and died March 3d, 1907. He was agent for the Prudential Insurance Company.

"When my husband F. H. G. Voelker, died, he left surviving him a minor child, ten years old, still living."

It was later admitted in the case that plaintiff had two minor children when her husband died; a boy and a girl.

The instructions given and refused are set forth or appropriately mentioned in the opinion proper.

There was a verdict and judgment for plaintiff for $3500, from which defendant has prosecuted this appeal.

CAULFIELD, J. (after stating the facts).—1. Appellant first contends that there was no evidence to sustain the verdict. There was ample evidence to justify the jury in finding that the defendant's duty of guarding the excavation and maintaining warning lights was broken. But it is insisted the evidence failed to show any causal relation between the negligence thus properly found and the injury which resulted in the

death of plaintiff's husband. It is true, as asserted by
defendant's counsel, that plaintiff was bound to prove
not only the negligence, but that her husband met his
death by reason thereof, and this causal connection must
be proved by evidence, as a fact, and not be left to mere
speculation and conjecture. The rule does not require,
however, that there must be direct proof of the fact
itself. It is sufficient if the facts proved are of such
a nature and are so connected and related to each other
that the conclusion therefrom may be fairly inferred.
[Settle v. Railroad, 127 Mo. 336, 341, 30 S. W. 125.]
It is an undisputed fact that plaintiff's husband was
found at the bottom of the excavation with his back
broken, and no witness saw him fall. Over him the
excavation was entirely open. He was close to the Lo-
cust street curb line, lying upon his back across a large
wooden roller. His position and condition thus shown
were sufficient to justify the inference that he was pre-
cipitated into the excavation and broke his back by
striking the roller. He stated to the officers who found
him that he had been shot and thrown into the excava-
tion, but an examination of his body disclosed that he
had not been shot. The jury were justified in attrib-
uting these statements to a disordered condition of mind
due to the man's terrible injury. They were fortified
in this by the fact that his watch, money and papers
were upon his person when he was found, and there
were no marks of violence visible except those palpably
due to his fall. We think it a fair and reasonable in-
ference from the surroundings and condition of the de-
ceased when found, that he was not murdered. There
is no presumption of law that deceased committed sui-
cide, and if his surroundings when found do not indi-
cate how he came to be there, the presumption is that
it was without design. [Buesching v. Gas Light Co.,
73 Mo. 219, 230.]

Defendant insists that the evidence justifies the
inference that the deceased walked through the build-

ing from Olive street seeking a toilet, and emerging on the Locust street side, walked out on some loose boards over the excavation until he reached a point near the Locust street curb, and there he fell in; and that this inference is more logical than that the deceased fell in while walking on Locust street, because the evidence shows the deceased got off a street car at Ninth and Pine streets to go to a toilet and had to pass Olive street in order to get to the excavation. Assuming this, defendant's counsel argues that barriers and lights around the outer edges of the excavation would not have prevented the accident. It is possible that the inference thus insisted upon might fairly be drawn by the jury. But the question we have to deal with here is whether there was evidence from which the jury could reasonably conclude the deceased fell in from the Locust street curb side. To say the least, it was more logical to infer that the deceased walked to the excavation along public streets where there were street lamps and where people usually walk, than that he committed a trespass and voluntarily chose to walk through a long dark building in the course of construction, between two and three o'clock in the morning. "In all questions touching the conduct of men, motives, feelings and natural instincts are allowed to have their weight and to constitute evidence for the consideration of courts and juries." [Johnston v. Railroad, 130 S. W. 413.] Defendant suggests that the cinders formed a barrier to the excavation. On the contrary it was logical for the jury to infer from the evidence that the deceased stumbled over them into the excavation and thereby they aided in his fall. We conclude that there was sufficient evidence to connect the injury of plaintiff's husband with the negligence of defendant.

2. Defendant insists that the instructions were erroneous in respect to the measure of damages. Plaintiff's first instruction authorized the jury "to assess her damages at such sum as the jury believes from the

evidence will compensate plaintiff for the death of her husband, the verdict not to exceed the sum of $5000." The second instruction contains the same direction. Defendant argues that this language is entirely too general and relies upon Coleman v. Land Co., 105 Mo. App. 254, 79 S. W. 981, and McGowan v. Ore & Steel Co., 109 Mo. 518, 19 S. W. 199. The latter case "is authority for the point suggested, but it has not been followed by the Supreme Court in later cases." [Dunn v. Northeast, etc., Co., 81 Mo. App. 42, 45.] In the other case (Coleman v. Land Co.), which was a suit by the parents for the negligent killing of a minor son, the fault of the instruction appears to have been that it was broad enough to authorize a recovery for the loss of the minor's services after he had become of age. It was a case of misdirection and not of nondirection. But be that as it may, it is now established that an instruction is not to be held erroneous because general in the directions relating to the measure of damages if it is correct as far as it goes. [Browning v. Railroad, 124 Mo. 55, 71, 27 S. W. 644.] The instruction under consideration here limits the jury's consideration to the injuries shown by the evidence and it is not suggested that there was evidence of anything not properly entering as an element into the measure of damages. We deem it similar in every essential feature to the one approved by the Supreme Court in the case of Browning v. Railroad, supra.

If defendant desired a more specific instruction on the measure of damages, it should have asked for it in proper form. [Simpson v. Ball, 129 S. W. 1017.] In this connection defendant suggests that it did ask, and the court refused, two instructions limiting the verdict to nominal damages, and contends such refusal was error. We will pass upon said refused instructions in their proper place in this opinion. Suffice to say here, that if unsound principles of law have been incorporated in them by the defendant it was not error in

the circuit court to refuse them or to fail to give a correct instruction of its own motion. [Barth v. Railroad, 142 Mo. 535, 556, 44 S. W. 778.]

Defendant furthermore suggests that in the cases approving general instructions, the evidence contained sufficient elements to enable the jury, without conjecture, to estimate the damages, while the evidence in the case at bar contained no such elements. That suggestion will be met in our discussion of the second instruction for nominal damages offered by defendant.

3. The defendant complains that the court erred in refusing an instruction, the pertinent part of which is as follows:

"The burden is upon the plaintiff to establish the amount of her pecuniary damages resulting from the death of F. H. G. Voelker, and you are instructed that if the evidence fails to show the earning capacity of the deceased, his habits of industry or sobriety, his treatment of his family, or whether he ever contributed anything to the support of his family, then you will assess the damages, if you find in favor of the plaintiff, at no more than a nominal amount."

The court would have erred had it given such an instruction. It was not necessary for the plaintiff to prove what the earnings of the deceased were to avoid being limited to nominal damages. [Haines v. Pearson, 107 Mo. App. 481, 485, 81 S. W. 645; Stoher v. Railroad, 91 Mo. 509, 518, 4 S. W. 389; Sipple v. Gas Light Co., 125 Mo. App. 81, 95, 102 S. W. 608.] Aside from his society, which she is not entitled to recover for, (Knight v. Lead & Zinc Co., 75 Mo. App. 541, 550), and aside from his support, the plaintiff had other property rights in the life of her husband. The personal attention of the husband to insure her comfort and the many ways he might make himself helpful and useful to her, should be taken into consideration in measuring her loss. For this loss she was entitled to substantial damages without any showing as to his

earnings. As the instruction ignored this element of damage, it was properly refused. The instruction was further erroneous in that it limited the plaintiff to nominal damages unless she showed her deceased husband's "habits of industry or sobriety, his treatment of his family and whether he ever contributed anything to the support of his family." If the evidence failed to show these things, then the law presumes that the deceased was industrious and sober, treated his family tenderly and properly, and contributed sufficiently toward their support. The law in this, as in other instances, presumes that duty will be performed. [Brunke v. Telephone Co., 112 Mo. App. 623, 628, 87 S. W. 84.] And even if he had not theretofore performed such duties, she had a right to such performance, and is not to be limited to merely nominal damages for the negligent destruction of that right. [Sedgwick on Damages (8 Ed.), sec. 578.]

4. The defendant next complains that the court refused to instruct the jury that under the evidence adduced the damages could not exceed a nominal amount; also that the verdict is excessive. These contentions rest upon the theory that the evidence does not disclose any basis for the jury to build upon in estimating plaintiff's damages. We cannot agree with defendant. Its theory is not borne out by the fact. Plaintiff might recover for the loss of the personal attention, helpfulness and usefulness of her husband, and for having to assume the burden of a father's care in the education, maintenance and support of the minor children, without showing his fortune, earnings or capacity to earn, or his habits or treatment of his family. [Tetherow v. Railway Co., 98 Mo. 74, 84, 11 S. W. 310; Haines v. Pearson, 107 Mo. App. 481, 485, 81 S. W. 645; Sipple v. Gas Light Co., 125 Mo. App. 81, 95, 102 S. W. 608; Brunke v. Telephone Co., 112 Mo. App. 623, 628, 87 S. W. 84.] Nor was it necessary to show with any degree of exactness, his age or state of health.

[Orscheln v. Scott, 90 Mo. App. 352, 361; Bigelow v. Metropolitan St. Ry. Co., 48 Mo. App. 367, 375.] True, the losses mentioned were prospective in character and their extent depends somewhat upon the life expectancy of the deceased, but from the very nature of these cases, the damage is largely, if not altogether, conjectural, not subject even to approximate admeasurement, and juries are not confined to any exact mathematical·calculation, but are vested with considerable discretion, with which the court will not interfere, unless it has been abused. [Parsons v. Railway, 94 Mo. 286; Brunke v. Telephone Co., supra; Stoher v. Railway, supra.] Even if the exact age of the deceased were shown, still the estimate must partake of the nature of conjecture. [Orscheln v. Scott, supra.] It must then be true that if any reasonable basis for the verdict can be inferred from the evidence, it is sufficient. Here it is shown that the deceased was employed as agent for an insurance company; that he had a child ten years old and another minor child whose age is not stated; that on the night of the injury he rode down town on a street car and was walking around at 2:30 o'clock in the morning and had been in a distant part of the city during the day. While it is true that the age and state of health of the deceased could not be inferred with any degree of accuracy from these facts, still it might fairly be inferred from them that the man was not extremely old or seriously disabled and had some degree of life expectancy. There was, then, ·something on which to base the verdict, and we do not feel that $3500 allowed to a wife for the loss of the personal attention, helpfulness and usefulness of her husband, and the casting upon her of the support and care of two minor children, one of whom was only ten years of age, is so large as to shock our sense of justice, even though the life expectancy of the deceased might not appear to be very great. The trial court correctly refused said instruction and the verdict was not excessive.

5. Defendant next contends that plaintiff's instruction number 3 is erroneous because it went beyond the duties imposed by the ordinance in relation to the display and maintenance of lights. As the defendant has failed to bring the ordinance before us in the abstract, we will not pass upon this contention, but will accept the trial court's construction of the ordinance as correct for the purposes of this review. [Hausmann v. Hope, 20 Mo. App. 193, 196.]

6. Likewise we do not find any error of which defendant can complain, in the fact that seven other persons and corporations were made parties to this action and that at the close of plaintiff's evidence the cause was dismissed as to them. [Moudy v. St. Louis Dressed Beef Co., — Mo. App. —, 130 S. W. 476, 481.]

7. Defendant assigns as error the refusal of the court to instruct the jury that "if you find from the evidence introduced by plaintiff that the deceased F. H. G. Voelker, at the time he so fell into said cellar, was intoxicated, and that his intoxication actually contributed to his injury and death, then you are instructed that plaintiff is not entitled to recover, and your verdict should be for the defendant." It is sufficient to say of this assignment that the salient features of the above quotation are embodied in the instruction which the court gave of its own motion and which we next consider. [Beatty v. Clarkson, 110 Mo. App. 1, 6, 83 S. W. 1033.]

8. Lastly defendant assigns as error that the court gave the following instruction of its own motion:

"The court further instructs the jury that if you find and believe from all the evidence that the defendant, F. H. G. Voelker, directly contributed to his injury and death by his own negligence or want of ordinary care at the time and place of falling into the excavation in question, then plaintiff cannot recover in this case, and your verdict should be for the defendant; and in this connection you are further instructed that the

law does not permit anyone to voluntarily incapacitate himself from the ability to exercise ordinary care for his own safety, and then to recover for an injury to which his own want of care, so caused, had directly contributed, nor can the widow of a man, injured while so incapacitated and through a want of care so caused, recover for his death brought about by such injury. If the jury do find from the evidence in this cause that said deceased fell into the excavation in question while in a state of intoxication, and that such intoxication directly contributed to the happening of such injury, *and that such injury would not have occurred but for such intoxication,* then your verdict will be for the defendant." (Italics ours.)

Defendant insists that this instruction was erroneous in the italicized part thereof. We must also rule this assignment against the defendant. The instruction properly declares the law. [Hicks v. Mo. Pac. Ry. Co., 46 Mo. App. 304, 312; Pinnell v. St. L. A. & T. Ry. Co., 49 Mo. App. 170, 172; Zumault v. Railroads, 175 Mo. 288, 311, 74 S. W. 1015; Huss v. Bakery Co., 210 Mo. 44, 52, 108 S. W. 63.] In the last cited case an instruction was approved which, in the aspect mentioned, was substantially like the one under discussion.

We have considered all questions raised by this record, and it follows from what we have said, that the cause was fairly tried and submitted to the jury, and the judgment entered upon the verdict should be and is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.